UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FRANKIE LEE JOHNSON, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-04931-TWP-MJD |
| ) | |
| KATHY ALVEY and J. AMMON, Lt., ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DIRECTING ENTRY OF FINAL JUDGMENT

This matter is before the Court on the parties' cross Motions for Summary Judgment. Plaintiff Frankie Lee Johnson, Jr. ("Mr. Johnson"), initiated this civil action alleging that defendants Kathy Alvey ("Warden Alvey") and Lt. Jerry Ammon ("Captain Ammon"[1]) (collectively the "Defendants"), violated his Eighth and Fourteenth Amendment rights while he was incarcerated at the Branchville Correctional Facility. Specifically, Mr. Johnson alleges that Warden Alvey and Captain Ammon approved his placement in a recreation cell when he was sent to segregation. (Dkt. 16 at 2.) He alleges cruel and unusual punishment because he had to sleep on a mattress on the floor when he had stab wounds in his back, had no access to running water or a toilet, and the lights were kept on in the cell for 24 hours a day. *Id.* For the reasons explained below, Mr. Johnson's Motion for Summary Judgment, (Dkt. 61), is **denied**, and the Defendants' Cross-Motion for Summary Judgment, (Dkt. 67) is **granted**.

---

[1] In the Defendants briefing, Defendant Jerry Ammon is referred to a Captain Ammon. When the Complaint was filed, Ammon was a Lieutenant at Branchville Correctional Facility; however, a Google search reveals that he was promoted to the rank of Captain in August 2019 (*see* Indiana Department of Correction press release dated August 28, 2019). Accordingly, in this Entry, the Court will refer to him as "Captain Ammon".

## I. STANDARD OF REVIEW

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir.

2009). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II. STATEMENT OF FACTS

The following statement of facts has been evaluated pursuant to the standard set forth above. The facts are considered undisputed except to the extent that disputes of fact are noted.

Mr. Johnson is an Indiana Department of Correction ("IDOC") inmate who was incarcerated at the Branchville Correctional Facility during the time relevant to his claims. (Dkt. 11.) On February 8, 2019, Mr. Johnson was placed in emergency administrative segregation

pending an investigation for an alleged battery upon another offender. (Dkt. 61-1 at 7, 11; Dkt. 68-1 at 1-2; Dkt. 68-4, ¶ 6.)

Due to overpopulation in the restrictive housing unit, offenders were held in recreation cells pending restrictive housing unit cell space. (Dkt. 61-1 at 2, 9; Dkt. 68-3 at 6.) Mr. Johnson was housed in this temporary administrative segregation recreation cell for four days. (Dkt. 61-1 at 2.) While housed there, "Johnson received water and was offered the ability to dispose of bodily waste every thirty (30) minutes or upon request, as instructed by the Warden." (Dkt. 68-4, ¶ 8; Dkt. 68-3 at 6.) He "was able to request, at any time . . . water, food, restroom use, hygienic materials such as hand sanitizer, and any other reasonable request which could be accommodated in accordance with facility policy." (Dkt. 68-4, ¶ 9; Dkt. 68-3 at 1, 3.) Mr. Johnson was provided with a mattress on the floor, without a bedframe. (Dkt. 61-1 at 3, 11; Dkt. 68-3 at 4.) Mr. Johnson asserts that while he slept on the mattress on the floor, he suffered pain from pre-existing stab wounds. (Dkt. 11 at 4.) According to his presentence investigation report, he had scars on his left shoulder and the left side of his back from stab wounds. (Dkt. 61-1 at 17.) His paperwork from his arrival at IDOC similarly indicates these scars. *Id.*

Mr. Johnson's "temporary housing unit contained lights which remained on twenty-four (24) hours per day. The unit also lacked plumbing or running water." (Dkt. 68 at 5.)

Inmates housed in emergency administrative segregation "are subjected to an intense and thorough review process, wherein reviewing officers will review the claims which were the cause for emergency placement." (Dkt. 68-4, ¶ 13.) Mr. Johnson was released from administrative segregation "several weeks prior to the completion of the investigation" that was completed on March 15, 2019, approximately 5 weeks after his emergency placement. *Id.*, ¶¶ 14-15.

### III. DISCUSSION

In his Complaint, Mr. Johnson alleges violations of both his Eighth and Fourteenth Amendment Constitutional Rights. On December 1, 2020, Mr. Johnson filed a one page Motion for Summary Judgment, with an attachment which contains his responses to request for admission. (Dkt. 61, Dkt. 61-1). On January 11,2021, Defendants filed their Response and Cross-Motion for Summary Judgment (Dkt. 67). In addition to addressing the merits of their Motion for Summary Judgment, the Defendants argue that Mr. Johnson "does not observe summary judgment procedure" as his dispositive motion "consists only of one exhibit, which includes information that actually contradicts his own claims." (Dkt. 68 at 3.) The Defendants contend that Mr. Johnson's "proffered evidence is undisputed," and they cannot respond because Mr. Johnson fails to cite to undisputed facts. *Id.* They argue that Mr. Johnson's response in opposition fails to comply with Fed. R. Civ. P. 56(c) or Southern District of Indiana Local Rule 56-1(e) because he fails to "cite to potentially determinative facts that he contends demonstrate a dispute of fact precluding summary judgment" and is not inclusive of a corresponding brief. *Id.* at 14. Thereafter, Mr. Johnson filed a two page response in which he lists some "statements of material fact in dispute" (Dkt. 71).

Recognizing that he is proceeding *pro se*, in its discretion, the Court will construe Mr. Johnson's pleadings liberally. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) ("It does not follow, however, that district courts cannot exercise their discretion in a more lenient direction: litigants have no right to demand strict enforcement of local rules by district judges."); *see Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) ("We have not endorsed the very different proposition that litigants are entitled to expect strict enforcement by district judges. Rather, it is clear that the decision whether to apply the rule strictly or to overlook any transgression is one left

to the district court's discretion." (citation and quotations marks omitted)). Thus, the Court will consider Mr. Johnson's Motion and attached exhibit and response in opposition.

The Court will address the Eighth Amendment claims, before turning to the Fourteenth Amendment claims.

### A.     Eighth Amendment Conditions of Confinement Claim

The Eighth Amendment's proscription against cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" by the state. *Hudson v. McMillian,* 503 U.S. 1, 5 (1992) (citation and internal quotations omitted). Pursuant to the Eighth Amendment, prison officials have the duty to provide humane conditions of confinement: "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (internal quotation omitted).

To succeed on a conditions-of-confinement claim under the Eighth Amendment, a plaintiff must demonstrate that 1) he was incarcerated under conditions that posed a substantial risk of objectively serious harm, and 2) the defendants were deliberately indifferent to that risk, meaning they were aware of it but ignored it or failed "to take reasonable measures to abate it." *Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008) (citing cases).

The objective showing requires "that the conditions are sufficiently serious—*i.e.*, that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (internal quotation omitted). "According to the Supreme Court, … 'extreme deprivations are required to make out a conditions-of-confinement claim.'" *Id.* (quoting *Hudson*, 503 U.S. at 9). "If under

contemporary standards the conditions cannot be said to be cruel and unusual, then they are not unconstitutional, and [t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* (internal quotation omitted).

After showing the objective component, a plaintiff must next establish "a subjective showing of a defendant's culpable state of mind," and "the state of mind necessary to establish liability is deliberate indifference to the inmate's health or safety." *Id.* (internal quotation omitted). Negligence or even gross negligence is not sufficient to support a deliberate indifference. *See Huber v. Anderson*, 909 F.3d 201, 208 (7th Cir. 2018).

Mr. Johnson raises complaints about his temporary placement in the recreation cell related to lighting, a mattress, running water, and access to a toilet. Considering Mr. Johnson's claims individually, and in their totality, the Court finds that they do not rise to a level of extreme deprivation of basic human needs required to establish violation of the Eighth Amendment. The Court addresses each condition, in turn.

    **1.**    <u>**Lighting in Housing Unit**</u>

First**,** the Defendants argue that 24-hour lighting in a housing unit does not objectively cause an extreme deprivation, and that Mr. Johnson has not shown that he suffered injury because of the lighting. (Dkt. 68 at 7-8.)

Mr. Johnson's situation does not establish that he "suffered a sufficiently serious constitutional deprivation which must be 'extreme' to be actionable" under the Eighth Amendment. *See, e.g., Cunningham v. Eyman*, 17 F. App'x 449, 459 (7th Cir. 2001). Applying this requirement to claims based on prolonged lighting, the Seventh Circuit has held that "24-hour lighting involving a single, 9-watt fluorescent bulb does not objectively constitute an 'extreme deprivation.'" *Vasquez*

7

*v. Frank*, 290 F. App'x 927, 929 (7th Cir. 2008). Other courts have determined that "cell house lights . . . beaming on high beams 24 hours a day" was not a sufficiently serious deprivation because the plaintiff's allegations "did not rise to a sufficiently serious deprivation." *See Allen v. Hardy*, 2012 WL 5363415, at *8 (N.D. Ill. Oct. 26, 2012) (plaintiff alleged the lights "made it nearly impossible to get a proper, healthy, uninterrupted night of sleep and leaves plaintiff and other inmates in a constant state of sleep deprivation," but he admitted to getting 6 hours of sleep though it took longer to get to sleep); *see also Isby v. Brown*, 856 F.3d 508, 514, 522 (7th Cir. 2017) (long-term segregation placement where 5 and 9-watt bulbs were on 24-hours, inmates could not turn off lights and testified to their vision and sleep being affected and development of headaches among other conditions claims failed objective element of Eighth Amendment standard).

Here, it is undisputed that "Plaintiff had no access to a light switch" when housed in the recreation cell. (Dkt. 61-1.) But Mr. Johnson makes only general allegations that the lights were on for 24 hours and interfered with his sleep, and he "had trouble getting to sleep." (Dkt. 11 at 4.) He provides no evidence to support any further details, such as the brightness or intensity of the light, whether his cell was constantly illuminated, or if he could diminish the amount of light shining in his cell. *See, e.g., Wheeler v. Godinez*, 2016 WL 5394385, at *4 (S.D. Ill. 2016) (summary judgment granted in favor of defendants; "Wheeler claims in a conclusory fashion that the lighting was 'on constantly' and there was 'constant illumination' . . . does not provide any other details or facts regarding the intensity of the light."). "[V]ague and conclusory assertions about the lighting . . . are not sufficient to create a genuine issue of material fact[.]" *Id.*

And, while Mr. Johnson points to two cases where prolonged lighting was considered more extreme, he points to no evidence that the conditions he experienced were like the conditions

8

considered in those cases. (Dkt. 71 at 2.) *See Ashcraft v. State of Tenn.*, 322 U.S. 143 (1944) (In relevant part, defendant argued that he was exposed to 36 hours of powerful electric light and sleep deprived during interrogation. Any confession he made was found to be involuntary); *Shepherd v. Ault*, 982 F. Supp. 643 (N.D. Iowa Nov. 12, 1997) (Plaintiffs' objections to magistrate's report and recommendation were sustained and recommendation to grant summary judgment in favor of defendants rejected where two plaintiffs raised claims about **24-hour lighting with 60-watt bulbs** that they were not allowed to cover up for respectively **283 nights and 550 nights**. **One plaintiff submitted an affidavit** in response to the summary judgment motion stating that it was very difficult for him to sleep at night, and elsewhere in the record, he alleged he was up most of the night. "[T]he court finds that an inference of psychological harm necessarily arises **from the length of time** the plaintiffs were subjected to **lighting so far removed from natural conditions**. This evidence generated a material fact issue on the extent of harm due to constant lighting.) (emphasis added).

Next, while prolonged lighting may violate the Eighth Amendment if it causes a prisoner to suffer medical issues, Mr. Johnson provides no evidence that the lights caused him to suffer any specific medical complaints. *See, e.g, Moore v. Cromwell*, 2020 WL 998692, at *15 (E.D. Wis. Feb. 28, 2020) (while the "plaintiff has *alleged* that the lights caused [eye damage, light sensitivity, or migraines], the *evidence* does not support those allegations.") (emphasis in original).

Accordingly, no reasonable juror could conclude that the lighting in Mr. Johnson's temporary recreation cell amounted to a constitutional deprivation. The Defendants are entitled to summary judgment as it relates to this claim.

    **2.**     **Mattress Without Bedframe**

Next, the Defendants argue that the Eighth Amendment does not require that Mr. Johnson be provided with a bedframe, that sleeping on a mattress without a bedframe is not severe, and that a period of four days under these circumstances is a short duration. (Dkt. 68 at 9.)

It is undisputed that Mr. Johnson was provided with a mattress to sleep on; rather, his argument is that this mattress was not elevated off the floor. "Sleeping on a mattress on the floor, particularly for short periods of time, is not unconstitutional." *Allen v. Engelson*, 2016 WL 4245514, at *3 (N.D. Ill. Aug. 11, 2016) (citing *Stephens v. Cottey*, 145 F. App'x 179, 181 (7th Cir. 2005) ("short-term deprivation is less serious for Eighth Amendment purposes than a long-term one," sleeping 3 days on bedframe sans mattress and 5 days sans bedframe is not a constitutional violation)); *see also Johnson v. Pelker*, 891 F.2d 136, 138-39 (7th Cir. 1989).

Mr. Johnson argues that he should not have had to sleep on a mattress on the floor because of "stab wounds to [his] back and shoulder." (Dkt. 71 at 2.) In support he points to his presentence investigation and inmate intake documents. *Id.* The presentence investigation report indicates a "scar" from stab wounds on his left shoulder and left side of his back. (Dkt. 61-1 at 17.) And his IDOC intake report completed on August 16, 2018, similarly documents "scars" from the stab wounds and from stiches. *Id.* at 18.

In a February 10, 2019 grievance, Mr. Johnson briefly wrote that he has a "bad shoulder from being stabbed twice and [he] had to push [himself] off the floor". (Dkt. 61-1 at 12.) In his Amended Complaint, signed under penalty of perjury, Mr. Johnson states that due to his stab wounds, sleeping on the floor caused him back pain. (Dkt. 11. at 4.) But Mr. Johnson has presented no evidence that his pre-existing stab injuries were ongoing and required additional medical attention, or that any particular sleeping accommodations were needed for his pre-existing medical condition. Mr. Johnson certainly has not provided evidence that he needed medical

10

treatment as a result of sleeping on the mattress for four days, and even if he had, there is no indication that he could show that he was seriously harmed. *See, e.g., Stephens*, 145 F. App'x at 181 ("although [plaintiff] sought medical treatment for a sore back because of the sleeping arrangements, it is undisputed that he was not seriously harmed and was merely prescribed a cold pack and analgesics," his conditions claim was undermined).

Mr. Johnson's complaint that due to his pre-existing injuries, he suffered pain from sleeping on the floor, is not enough by itself to establish an Eighth Amendment violation. *See, e.g., Chavis v. Fairman*, 51 F.3d 275 (7th Cir. 1995) (grant of the defendants' motion to dismiss was affirmed where plaintiff alleged that he was forced to sleep on a mattress on the floor rather than a bed, and the "primary objection to this situation seems to be that sleeping on a mattress on the floor caused pain in his hip and leg, [from numerous gunshot wounds].").

Accordingly, no reasonable juror could conclude that Mr. Johnson suffered a constitutional deprivation by sleeping on a mattress on the floor in the recreation cell for four days. The Defendants are entitled to summary judgment as it relates to this claim.

### 3. Lack of Toilet and Running Water

Finally**,** the Defendants argue that Mr. Johnson cannot establish an Eighth Amendment claim based on lack of running water or toilets because he had alternatives to obtain clean water and dispose of waste. (Dkt. 68 at 10.)

Indeed, "[t]here is no constitutional right to running water in a prison cell," and the Constitution is not violated where an inmate has access to water in other areas of the facility. *Downs v. Carter*, 2016 WL 1660491, at *8 (N.D. Ill. Apr. 27, 2016). Here, it is undisputed that while in the temporary recreation cell, Mr. Johnson was offered water and other items such as hand sanitizer every thirty minutes or upon request. (Dkt. 68-3.) In his grievances, Mr. Johnson writes

that he was given water during his mealtimes. *Id.* at 4. He presents no evidence that he was denied any further request for water to drink or to utilize for hygiene.

In addition, "adequate toilet facilities 'are among the minimal civilized measures of life's necessities that must be afforded prisoners.'" *Clay v. Johnson*, 2020 WL 1304628, at *3 (N.D. Ill. Mar. 19, 2020) (quoting *Akindele v. Arce*, No. 15 C 5952, 2017 WL 467683, at *4 (N.D. Ill. Feb. 3, 2017)). "A short-term breakdown, however, where the inmate otherwise has access to drinking water and alternative bathroom facilities, does not violate the Constitution." *Id.* Here, Mr. Johnson was placed in a cell without restroom facilities for only four days. And he was offered the "ability to dispose of bodily waste" every thirty minutes and "was able to request, at any time … restroom use." (Dkt. 68-4, ¶¶ 8, 9.) Further, Mr. Johnson has presented no evidence, for example, that he needed to, and was denied, any request to use the bathroom, that he was forced to urinate or defecate on himself, or that he was forced to be surrounded by bodily waste. Mr. Johnson writes in his grievances that he was given a jar to urinate in that was emptied two times per day. (Dkt. 68-3 at 4.) Though an uncomfortable circumstance, Mr. Johnson's grievances support that bodily waste—if it had been collected from him—was being removed from his cell and disposed of outside his cell.

In short, there is no evidence that these conditions were extreme or spanned a duration that could implicate the Eighth Amendment. *See, e.g.*, *Howard v. Wheaton*, 668 F. Supp. 1140 (N.D. Ill. Aug. 12, 1987) (motion to dismiss denied where plaintiff alleged that he was exposed to unsanitary and unhealthy conditions when forced to urinate and defecate in broken toilets for 13 days); *Sanford v. Brookshire*, 879 F. Supp. 691 (W.D. Tx. June 24, 1994) (court found after a bench trial that the plaintiff's Eighth Amendment rights were violated when he was forced to use shower floor as receptacle for his bodily waste, cleaning supplies were not provided, and he was

forced to eat and sleep around the stifling odor for 6 days);[2] *see also Johnson,* 891 F.2d at 136 (summary judgment in favor of defendant as to the conditions of plaintiff's cell—prisoner in cell for three days without running water with feces smeared on walls and was denied cleaning supplies—vacated and remanded).

No reasonable juror could conclude that Mr. Johnson suffered a constitutional deprivation by temporarily being in a cell that lacked running water and a toilet when offered alternative opportunities every thirty minutes. Thus, the Defendants are entitled to summary judgment as it relates to this claim.

**B.** **Fourteenth Amendment Due Process Claim**

The Defendants argue that Mr. Johnson's placement in segregation did not violate his due process rights under the Fourteenth Amendment because it was brief and non-pretextual. (Dkt. 68 at 11.) The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." But "in some cases … the inmate's liberty interest in avoiding segregation [is] very limited or even nonexistent." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693 (7th Cir. 2009). "Inmates have no liberty interest in avoiding transfer to discretionary segregation-that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend*, 522 F.3d at 765. In determining whether due process is implicated, "both the duration and the conditions of the segregation must be considered." *Marion*, 559 F.3d at 698.

Here, it is undisputed that Mr. Johnson was placed in emergency administrative segregation for investigative purposes after a suspected battery. Mr. Johnson's placement review was completed March 15, 2019—approximately five weeks after the emergency placement. And by that time, he had already been released from segregation. (Dkt. 68-4, ¶¶ 13-15.) As the Court has

---

[2] While Mr. Johnson references these two cases in his response, his allegations are dissimilar and are distinguishable.

outlined above, the conditions of Mr. Johnson's placement did not rise to the level of constitutional violations. Accordingly, no reasonable juror could conclude that Mr. Johnson's placement in administrative segregation violated the Fourteenth Amendment. Thus, the Defendants are entitled to summary judgment as it relates to this claim.

C.     **Qualified Immunity Defense**

As discussed above, there is no constitutional violation, therefore, the Court need not address the Defendants' qualified immunity defense to Mr. Johnson's claims.

### IV.  CONCLUSION

For the reasons explained above, Mr. Johnson's Motion for Summary Judgment, Dkt. [61], is **DENIED**, and the Defendants' Cross-Motion for Summary Judgment, Dkt. [67], is **GRANTED**.

Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date:  9/17/2021

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Frankie Lee Johnson, Jr., #201022
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Electronic Service Participant – Court Only

Thomas Joseph Flynn
INDIANA ATTORNEY GENERAL'S OFFICE
tom.flynn@atg.in.gov

Brandon Alan Skates
INDIANA ATTORNEY GENERAL'S OFFICE
brandon.skates@atg.in.gov